UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

EVELYN PENA,

                                    Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-3304 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Evelyn Peña ("Peña") brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the Social Security Administration's ("SSA's") denial of

her claim for Social Security disability insurance benefits and supplemental security income.

(Complaint (Docket Entry # 1).) Peña and the Commissioner of Social Security (the

"Commissioner") both move for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c). (See Memorandum of Law in Support of the Defendant Commissioner's

Motion for Judgment on the Pleadings ("Commissioner's Motion") (Docket Entry # 19);

Memorandum of Law in Support of Plaintiff's Cross-Motion for Judgment on the Pleadings

("Peña's Motion") (Docket Entry # 24).) As set forth below, the court remands for further

development of the evidence.

## I.    STANDARD OF REVIEW

### A.    Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but

early enough not to delay trial – a party may move for judgment on the pleadings." The standard

of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion.

Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule

12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

**B.     Administrative Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II.    BACKGROUND

Peña was born on July 6, 1966. (Administrative Transcript ("Tr."), 11-B (Docket Entry ## 8-9).) On February 17, 2005, Peña applied for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging a disability onset date of October 1, 2004. (Id.) Peña's application was denied and Peña sought a hearing before an Administrative Law Judge ("ALJ"). (Id.) On February 6, 2007, ALJ Hazel C. Strauss heard Peña's testimony concerning her application, and ordered a continuance of the hearing to review additional evidence. (Id.) On May 17, 2007, the ALJ heard additional testimony from Peña. (Id.) On April 3, 2008, the ALJ issued an unfavorable decision, and Peña appealed to the SSA Appeals Council for review. (Id. ("Notice and Decision"), at 11-B - 13.) On July 25, 2008, the SSA Appeals Council denied Peña's request for review. (Id., at 3-5.) This denial of review made the ALJ's April 3, 2008 Notice and Decision a "final judgment" subject to judicial review in this court by operation of 42 U.S.C. § 405(g). Peña timely filed her Complaint on August 7, 2008. See 42 U.S.C. § 405(g).

## III.    DISCUSSION

### A.    Standard for Determining Disability

To determine whether a claimant is entitled to DIB or SSI, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.

> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.

> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security

regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995). The ALJ used this five step analysis in assessing Peña's claim. (Tr. 11-B – 13.)

## B. The ALJ's Findings: Steps One to Three

Under the first step of the analysis, the ALJ found that Peña was not engaged in "substantial gainful activity." (Tr. 11-D.) No party disputes this finding. Under the second step of the analysis, the ALJ found that Peña suffered from the medically severe conditions of "major depressive disorder with psychotic features and depression secondary to hypothyroidism and post traumatic stress disorder." (Id. at 11-E.) The ALJ rejected, however, Peña's "lumbar spine pain, high blood pressure, and asthma" as not medically severe impairments. (Id.) In a lengthy footnote, the ALJ analyzed reports of Peña's back pain from the Woodhull Medical and Mental Health Center; a January 24, 2005 medical exam concerning Peña's blood pressure; and a February 8, 2006 examination concerning Peña's asthma. (Id.) Based on these reports, the ALJ found that none of the conditions were "severe" because they did not "significantly limit the ability to perform basic work-related activities for 12 consecutive months" under 20 C.F.R. §§ 404.1521 and 416.921. (Id.) No party disputes any of these findings. Under the third step of the

4

analysis, the ALJ found that none of Peña's severe impairments, alone or in combination, met or exceeded any of the SSA's Listing of Impairments. (Id. at 11-E - 11-F.) No party disputes this analysis.

### C. The ALJ's Findings: Step Four

#### 1. Medical Evidence

The parties do dispute the ALJ's analysis regarding step four. There, the ALJ found that despite Peña's medically severe impairments, she nonetheless possessed sufficient "residual functional capacity for simple unskilled work." (Tr. 11-F.) The ALJ considered the testimony of Peña's treating psychiatrist, Dr. Rizalina Fernandez, and found "significant discrepancies between Dr. Fernandez's statements and check offs [of "marked limitations" in an SSA form] and her own treatment notes, and the claimant's hearing testimony." (Id. at 11-G.) For instance, although Dr. Fernandez reported that Peña was "fearful to go outside," (id.), other medical reports and Peña's testimony demonstrated that Peña attended school five days a week in the mornings, took one of her children to therapy twice a week, rode the subway, walked her youngest son to and from school, attended parent-teacher conferences, participated in group therapy sessions, and planned on attending a "Welfare Fair Hearing" and going to church on Sundays. (Id. at 11-G - 12.) While Dr. Fernandez wrote that Peña "has marked psychiatric limitations in performing activities of daily living," other evidence showed that Peña "holds her 45 pound child, and sometimes cooks for the family, sweeps, mops, does laundry, washes dishes, makes beds, shops (sometimes alone or with a friend), watches television and stays at a friend's house on weekends . . . . [and] takes care of her 3 year old son." (Id. at 11-G.) The ALJ similarly discounted Dr. Fernandez's statements that Peña "keeps to self . . . has poor concentration forgets things [sic] and poor memory and still has limited to no desire to do

anything." (Id. (internal quotations omitted).) Based on these discrepancies, the ALJ noted that she "[gave] very little weight" to some of Dr. Fernandez's opinions. (Id.)

Instead, the ALJ gave "great weight" to the assessment of Dr. Janice Drucker, a New York State Disability Determination Services physician who examined Peña on April 14, 2005. The ALJ focused on Dr. Drucker's opinion that Peña was not significantly limited in a number of activities, including "the ability to understand and remember very short and simple instructions" and "the ability to perform activities within a schedule." (Id. at 12.) The ALJ also considered a January 4, 2005 report of Thalia Llosa, Peña's then-psychotherapist, (Id. at 11-G n.3, 12 n.5.), and a January 2, 2007 report of Dr. Stella Milos, a physician who treated Peña from May 5, 2004 until January 29, 2007 (Id. at 11-G; 243-83.).

Balancing this evidence, the ALJ found that Peña possessed sufficient "residual functional capacity" to perform her past relevant work: belt buckle assembly. (Id. at 13.) The ALJ noted that "[t]his unskilled sedentary job . . . does not require the performance of work-related activities precluded by claimant's residual functional capacity." (Id.) Because the ALJ found that Peña was able to perform her previous work, the ALJ concluded that Peña was not "disabled" for the purposes of receiving DIB and SSI. (Id.)

### 2. Treating Physician Rule

Peña argues that, under the "treating physician rule," the ALJ committed legal error by discounting Dr. Fernandez's opinion that Peña had "marked psychiatric limitations in performing activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace." (Tr. 11-G; Peña's Motion at 14-19.) The treating physician rule requires an ALJ to give a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

6

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R.

§ 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based

'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-

4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80

(2d Cir. 1998)). But, where other medical opinions in the record contradict the treating

physician's opinion, an ALJ need not give the treating physician's opinion controlling weight.

(Id.)

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ

must assess several factors to determine how much weight to give the assessment. 20 C.F.R.

§ 404.1527(d)(2). An ALJ must assess the length, nature, and extent of the treatment

relationship; the "supportability" of the medical opinion; the consistency of the opinion with

other evidence in the record; the treating physician's specialization, if any; and any other factors

the claimant may bring to an ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While an ALJ

need not recite each one of these factors by rote, it must be clear from the Notice and Decision

that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362

F.3d 28, 32 (2d Cir. 2004). In any event, an ALJ must provide "good reasons" for the lack of

weight given to the treating physician's opinion. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d

Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in

determining the weight to afford the treating physician can be grounds for remand." Sutherland

v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983,

986 (2d Cir. 1987)).

In her April 3, 2008 Notice and Decision, the ALJ referenced 20 C.F.R. § 404.1527, the

regulation codifying the treating physician rule. (Tr. 11-F.) The ALJ thoroughly discussed the

supportability of Dr. Fernandez's opinion and its lack of consistency with the other evidence in the record. (Tr. 11-G - 12); see 20 C.F.R. § 404.1527(d)(3)-(4). In discussing the supportability of Dr. Fernandez's conclusions, the ALJ reviewed Dr. Fernandez's treatment notes, progress reports, psychiatric assessments made by Dr. Fernandez, and check-off forms signifying Dr. Fernandez's opinion of Peña's limitations. (Tr. 11-G - 12); see 20 C.F.R. § 404.1527(d)(2)(i)-(ii). While the ALJ did not discount Dr. Fernandez's treatment notes and progress reports, she found Dr. Fernandez's psychiatric assessments and "check-off" opinions were inconsistent with Peña's testimony and with three other experts' opinions: Dr. Drucker, a psychiatrist; Dr. Milos, a physician; and Ms. Llosa, a social worker. (Tr. 11-G - 12); see 20 C.F.R. § 404.1527(d)(3)-(5). But, while the ALJ recognized that Dr. Fernandez was Peña's treating psychiatrist, the ALJ did not analyze the length, nature, and extent of the relationship between Dr. Fernandez and Peña. (Id. at 11-G - 12); see 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii). Nor does it seem that the ALJ afforded Dr. Fernandez's opinions any additional weight due to her specialty as a psychiatrist, the medical field most pertinent to Peña's claims. See 20 C.F.R. § 404.1527(d)(5). It is unclear, therefore, whether the ALJ gave Dr. Fernandez's opinion its due under the treating physician rule. Though the ALJ's analysis was otherwise quite thorough and substantive, this "reasonable basis for doubt that the ALJ applied the correct legal standard" requires the court to remand the proceedings, albeit for the limited purpose of directing the ALJ to weigh Dr. Fernandez's opinion in light of the length, nature, and extent of the relationship between Dr. Fernandez and Peña, and Dr. Fernandez's specialty in psychiatry. See Sutherland, 322 F. Supp. 2d at 291.

### 3. Peña's Credibility

Peña argues that the ALJ committed legal error by failing to properly evaluate her subjective testimony concerning her disability. (Peña's Motion at 20-21.) To assess a claimant's allegations concerning the severity of her disabilities, an ALJ must engage in a two-step analysis.

8

First, "the ALJ must decide whether the claimant suffers from a medically determinable

impairment that could reasonably be expected to produce the symptoms alleged." Genier v.

Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the

claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the

claimant's symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence of record." Id. (internal quotations omitted) (citing 20 C.F.R. §

404.1529(a)). If an ALJ finds that the claimant's testimony is not consistent with the medical

evidence of record, the ALJ must weigh the credibility of the claimant's testimony in light of

> (1) the claimant's daily activities;
>
> (2) the location, duration, frequency, and intensity of the pain;
>
> (3) precipitating and aggravating factors;
>
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>
> (5) any treatment, other than medication, that the claimant has received;
>
> (6) any other measures that the claimant employs to relieve the pain; and
>
> (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R.

§ 404.1529(c)(3)).

Reviewing Peña's testimony, the ALJ referenced 20 C.F.R. § 404.1529 and found "that

the claimant's medically determinable impairments could reasonably be expected to produce

some of the alleged symptoms; however, the claimant's statements concerning the intensity,

persistence, and limiting effects of these symptoms are not credible to the extent alleged." (Tr.

12.) The ALJ made her credibility determination on the basis of a lengthy analysis of Peña's

daily activities (Id. at 11-G), the duration and frequency of Peña's episodes of depression (Id. at 11-E – 11-F), and aggravating factors of Peña's condition, such as fear of her violent husband (Id. at 11-G). Nonetheless, the ALJ did not appear to address Peña's credibility in light of her medication regime or other non-pharmaceutical treatments, or any other factors Peña addressed during her testimony concerning the severity of her condition. See 20 C.F.R. § 404.15289(c)(3)(iv)-(vii). Because this constitutes legal error, the court directs the ALJ, on remand, to weigh these factors in assessing the credibility of Peña's allegations of the severity of her symptoms. See Genier, 606 F.3d at 50.

### 4. Peña's Residual Functional Capacity for Her Prior Work

Because the ALJ found that Peña possessed "residual functional capacity" to engage in basic work activities, the ALJ determined that Peña was capable of performing her prior job as a belt-buckle assembler. (Tr. 13.) On the basis of Peña's testimony, the ALJ determined that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work . . . the claimant is able to perform it as actually and generally performed." (Id.) Peña argues that this determination lacked the support of substantial evidence because the ALJ failed to obtain sufficient factual detail concerning the requirements of the job. (Peña's Motion at 21-23.) Because the court otherwise remands proceedings to the ALJ for further development of the evidence concerning Peña's and Dr. Fernandez's testimony, the court directs the ALJ to reassess whether Peña is capable of performing her previous job should the ALJ find that Peña possesses "residual functional capacity" for unskilled work.

## IV.    CONCLUSION

For the reasons discussed above, the court vacates the Commissioner's determination that

Plaintiff was not entitled to DIB or SSI during the relevant period, and remands proceedings for

further development of the evidence.


SO ORDERED.                                             s/Nicholas G. Garaufis

Dated:  Brooklyn, New York                          NICHOLAS G. GARAUFIS
October 22, 2010                                    United States District Judge